IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

———————————————————

GREGORY LEE KING D'AREZZO,

        Plaintiff,

    VS.

GUILD MORTGAGE COMPANY,

        Defendant,

Case No.  23-CV-0242-SWS

---

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGEMENT**

---

Plaintiff D'Arezzo brings this action seeking relief from the loan he took out to purchase his home in Douglas, Wyoming. Defendant Guild, after purchasing the loan from the original creator, is now the present owner of the loan. At its core, this action challenges whether Defendant Guild has a legally enforceable interest in the loan, such that Guild can enforce a foreclosure action against D'Arezzo for being in default on the loan. Presently before the Court are both parties' cross motions for summary judgement. (ECF No. 10, 18). Having considered the parties' briefs, responses, and the record in this case, the Court grants Defendant Guild Mortgage's Motion for Summary Judgment and denies Plaintiff Gregory Lee King D'Arezzo's pro se Motion for Summary Judgment.

## BACKGROUND

On November 29, 2022, Gregory Lee King D'Arezzo borrowed $220,924 from Cherry Creek Mortgage, LLC ("Cherry Creek") to purchase real property located at 200 South Russell Avenue, Douglas, Wyoming ("the Property"). (ECF No. 2, ¶ 10; ECF No. 12-2 at 6-8.)  The loan ("Loan") is evidenced by a promissory note ("Note") signed by D'Arezzo. (ECF No. 12-2 at 6-8.) To secure the Note, D'Arezzo executed and signed a Mortgage on the Property in favor of Mortgage Electronic Registration Systems, Inc. ("MERS")[1], as nominee for Cherry Creek and its successors and assignees. (*Id.* at 11, 22.) A Warranty Deed and the Mortgage were properly recorded in the real property records of Converse County on November 30, 2023. (ECF No. 12-4 at 24; ECF No. 12-2 at 9.)

The terms of the Note required D'Arezzo to make his first monthly mortgage payment on January 1, 2023. (ECF No. 12-2 at 6.) It also provided that if D'Arezzo defaulted on his payment obligations, the Note holder could require immediate payment in full. (*Id.* at 7.)

---

[1] As helpful background, the Tenth Circuit Bankruptcy Appellate Panel has described MERS and its function as follows:

> MERS is a private corporation that administers the MERS System, a national electronic registry that tracks the transfer of ownership interests and servicing rights in mortgage loans. Through the MERS System, MERS becomes the mortgagee of record for participating members through assignment of the members' interests to MERS. MERS is listed as the grantee in the official records maintained at county register of deeds offices. The lenders retain the promissory notes, as well as the servicing rights to the mortgages. The lenders can then sell these interests to investors without having to record the transaction in the public record. MERS is compensated for its services through fees charged to participating MERS members. *In re Trierweiler*, 484 B.R. 783, 789-90 (10th Cir. BAP 2012) (*quoting Mortg. Elec. Registration Sys., Inc. v. Neb. Dep't of Banking & Fin.*, 704 N.W.2d 784, 785 (Neb. 2005)) (footnotes omitted).

Shortly after D'Arezzo executed the Note and Mortgage, Cherry Creek sold and transferred the Note to Wyoming Community Development Authority (WCDA). (ECF No. 12-3 at 3, ¶ 14; ECF No. 19-1 at 3. ¶ 13.) D'Arezzo received and signed a letter acknowledging this transfer and that his first mortgage payment was now payable to WCDA. (ECF No. 12-4 at 26.) MERS then assigned the Mortgage to WCDA, and the assignment was properly recorded in the Converse County real property records. (ECF No. 12-4 at 28.)

In February 2023, one month after the first payment was due, D'Arezzo sent WCDA one silver dollar in an attempt to pay for the Loan in full. (ECF No. 8-12 at 1). WCDA responded by returning the silver dollar to D'Arezzo and informed him that it would not accept a silver dollar as payment in full for the Loan. *Id.* As such, D'Arezzo did not make the first monthly mortgage payment, nor any payments thereafter. (ECF No. 19-1 at 3, ¶ 15; ECF No. 12-1 at 3, ¶ 15.)

An important provision in WCDA's agreement to purchase D'Arezzo's Loan from Cherry Creek, was a condition that if there was an early payment default on the Note, Cherry Creek would repurchase the Loan from WCDA. (ECF No. 19-1 at 3, ¶ 18.) Therefore, due to D'Arezzo's failure to make any payments on the Loan, WCDA required Cherry Creek to repurchase the Loan. (*Id*. at 4 ¶ 19.)

After repurchasing the Loan, Cherry Creek formally sold and transferred the Loan to Guild. (ECF No. 12-3 at 4, ¶ 19; ECF No. 12-1 at 3, ¶ 12.) WCDA then assigned the mortgage to Guild and promptly recorded this assignment in the Converse County real property records on November 1, 2023. (ECF No. 12-4 at 30-31.) After purchasing the

Loan, Guild notified D'Arezzo that the Note was transferred to Guild, that the Loan was in default, and that all future correspondence and payments should be directed to Guild. (ECF No. 12-1 at 3, ¶ 14.)

However, at this time an issue arose during Guild's processing of the Loan documents received from Cherry Creek. During Guild's scanning process, the original Note was inadvertently lost or destroyed. (ECF No. 12-1 at 4, ¶¶ 17,18.) Though Guild contends the lost or destroyed Note is still enforceable under Wyo. Stat. §34.1-3-309 (ECF No. 19 at 14), Guild preferred to possess an originally signed promissory note and arranged for Cherry Creek (the Loan originator) to request D'Arezzo sign a replacement note. (ECF No. 12-1 at 4, ¶ 19.) Cherry Creek contacted D'Arezzo by phone message, email, and FedEx, requesting he sign a replacement note, but D'Arezzo refused. (*Id.* ¶¶ 19,20; ECF No. 8-3 at 1-3.) D'Arezzo believed the destruction or misplacement of the Note rendered the Loan unenforceable. (ECF No. 8-4 at 1.)

In a series of letters to Guild, Cherry Creek, and the law firm representing Guild, D'Arezzo asserted the Note and/or Loan was unenforceable, nonexistent, or void. (ECF No. 8-5 at 1; ECF No. 3, ¶ 2.) D'Arezzo demanded Guild provide him with various IRS forms, a MoneyNet Daily Log Report 120, and remove any reports from Guild and WCDA on his credit report. (ECF No. 8-4 at 1; ECF No. 8-5 at 1; ECF No. 8-6 at 1; ECF No. 8-8 at 1.) Guild responded to D'Arezzo's letters, explaining the Note was valid and enforceable, the IRS forms could be obtained directly from the IRS, and that Guild had accurately reported D'Arezzo's history of non-payment to the credit bureau. (ECF No. 8-6; see also ECF No. 8-9 at 1.)

Because D'Arezzo had still not made any payments on the Loan, Guild commenced a non-judicial foreclosure on the Property on November 22, 2023. (ECF No. 12-2 at 59.) Shortly thereafter, D'Arezzo filed this action.

## PROCEDURAL BACKGROUND

Through the Amended Complaint (hereafter "Complaint"), D'Arezzo asserts nine claims against Guild.  The Complaint alleges: (1) Guild lacks standing to foreclose on the Property, (2) Guild violated the Gramm-Leach-Bliley Act by disclosing nonpublic personal information to non-affiliated third parties, (3) D'Arezzo was denied the right to rescind the mortgage transaction, (4) D'Arezzo was denied the right to pay his mortgage payment in (a) silver coin, (5) Guild slandered D'Arezzo's title to the Property by posting and publishing a Notice of Default and Trustee's Deed, (6) D'Arezzo seeks quiet title to the Property, (7) D'Arezzo requests declaratory relief, (8) a civil RICO claim under 18 U.S.C. § 1961 et seq. against Guild, and (9) a violation of the Real Estate Settlement Procedures Act (RESPA). (ECF No. 2 at 6-14.) Guild timely filed its Answer. (ECF No. 2.)

D'Arezzo previously brought a Summary Judgement Motion, alleging that Guild failed to meet a variety of procedural requirements in its Answer. (ECF No. 7.) This Court denied the motion because D'Arezzo failed to show that an award of summary judgement was appropriate as a matter of law. (ECF No. 43.)

Now before the Court are both parties' motions for summary judgement. (ECF No. 10, 18.) In addition, Plaintiff has filed a Motion for Preliminary Injunction and Motion (ECF No. 37) and Motion for an Emergency Hearing (ECF No. 39) on his request for preliminary injunction. As detailed below the Court will grant Defendant's motion for

summary judgment and deny Plaintiff's motion, as well as his request for preliminary injunction and emergency hearing. The undisputed facts establish that Defendant is entitled to summary judgment on Plaintiff's claims and is legally entitled to enforce the Note and Mortgage into which the parties entered.

## LEGAL STANDARD

"Cross-motions for summary judgment are treated as two individual motions and held to the same standard." *Banner Bank v. First American Title Insurance Company, 916 F.3d 1323, 1326* (10th Cir. 2019). A court shall grant summary judgement "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgement as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it is necessary to determine the outcome of the case. *Roberts v. Jackson Hole Mountain Resort Corporation*, 884 F.3d 967, 972 (10th Cir. 2018). A dispute is genuine if evidence exists that it may lead a reasonable trier of fact to return a verdict for the non-moving party. *Olivero v. Trek Bicycle Corporation*, 291 F. Supp. 3d 1209, 1218 (D. Colo. 2017). In considering the motion, the Court views the record and all reasonable inferences in favor of the non-moving party. *Dahl v. Charles F. Dahl, M.D., P.C. Defined Ben. Pension Trust*, 744 F.3d 623, 628 (10th Cir. 2014).

The moving party carries the burden of establishing that no genuine dispute exists and that summary judgment is appropriate as a matter of law. *Kannady v. City of Kiowa, 590 F.3d 1161, 1169* (10th Cir. 2010). If the moving party carries this initial burden, then the non-moving party must submit sufficient evidence in specific factual form showing that a genuine material dispute exists. *Dahl*, 744 F.3d at 628. Testimony or other

evidence founded on speculation is insufficient to create a genuine dispute of material fact. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 876 (10th Cir. 2004).

## ANALYSIS

Before the Court are both parties' motions for summary judgement. Though D'Arezzo's filings are not the image of clarity, the Court liberally construes his pro se motion to assert that based upon the facts of the case, D'Arezzo is entitled to judgement as a matter of law. (ECF No. 2, 8, 10, and 22.) In comparison, Guild argues that it is entitled to summary judgement because based on the undisputed facts, D'Arezzo's claims lack legal merit and should be dismissed. (ECF No. 19 at 1.)

Each of D'Arezzo's claims stem from the Loan he took out to purchase the Property. (ECF No. 12-2). Therefore, essential to this action is the Loan's chain of transfer. As discussed above, the Loan's chain of transfer is evidenced by exhibits and affidavits submitted by Guild. Because D'Arezzo has not produced evidence or alleged facts that challenge the legitimacy of these documents, the Court finds as fact that the Loan's chain of transfer was from Cherry Creek, to WCDA, back to Cherry Creek, and then to Guild. With these facts established, the Court assesses each of D'Arezzo's claim in turn.

### I.     Guild's Standing to Foreclose

D'Arezzo's first claim asserts that Guild does not have standing to foreclose on the Property. Specifically, he argues that Guild does not have standing because it does not have the original loan document. (ECF No. 2 at 7, ¶¶ 42-46.) In support of this argument,

D'Arezzo cites to Federal Rule of Evidence 1002, but does not provide any analysis for

how this rule supports his claim. *Id.*

Rule 1002 requires a party to offer an original writing when the contents of the

writing are at issue unless another rule or federal statute provides otherwise. Fed. R. Evid.

1002. Even assuming the contents of the Loan are at issue, Guild aptly argues that

Wyoming Statute § 34.1-3-309 controls. This statute provides that:

> A person not in possession of an instrument is entitled to enforce the instrument if
> (1) the person was in possession of the instrument and entitled to enforce it when
> loss of possession occurred, (2) the loss of possession was not the result of a
> transfer by the person or a lawful seizure, and (3) the person cannot reasonably
> obtain possession of the instrument because the instrument was destroyed, its
> whereabouts cannot be determined, or it is in the wrongful possession of an
> unknown person or a person that cannot be found or is not amenable to service of
> process.

WYO. STAT. ANN. § 34.1-3-309(a).

If these requirements are met, the person seeking enforcement of the instrument must

"prove the terms of the instrument and the person's right to enforce the instrument" and

must adequately protect the payor against a third-party claim seeking to enforce the

instrument. § 34.1-3-309(b). Thus, whether Guild can enforce the Loan hinges on its

ability to meet § 34.1-3-309's requirements.

First, Guild has submitted an Affidavit of Lost Promissory Note by Brian Orsino

attesting that these three requirements are met. (ECF No. 12-2 at 27). The Tenth Circuit

has affirmed that an Affidavit of Lost Promissory Note satisfies § 34.1-3-309's initial

three requirements. *Resolution Trust Corp. v. Love*, 36 F.3d 972, 974 (10th Cir. 1994).

Second, the terms of the instrument are established by the copy of the Note and

D'Arezzo's acknowledgement of the execution of the Note. (ECF No. 12-2 at 6; ECF No. 2 at 5, ¶ 28); *Resolution Trust Corp.*, at 974 (stating that a copy of the note and defendant's acknowledgement of the execution of note establish the terms of the note). And thirdly, Guild asserts that D'Arezzo is protected from third party claims because Guild knows that the Note was destroyed. (ECF No. 19 at 14); *see also In re Kim*, 809 Fed.App'x 527, 537-39 (10th Cir. April 28, 2020) (discussing identical requirements under Colorado's lost-instrument statute).

Importantly, D'Arezzo has not alleged facts or provided evidence that disputes the Affidavit and or other evidence provided by Guild as to the Mortgage and Note. Rather, D'Arezzo's Complaint, Motion for Summary Judgement, and subsequent briefs rely only on conclusory statements that Guild does not have an interest in the Property. It does. For these reasons, the Court finds that D'Arezzo has failed to establish that Guild lacks standing to foreclose on the Property and therefore denies D'Arezzo's Motion for Summary Judgement on this issue. Additionally, because Guild has presented evidence establishing its standing to enforce the foreclosure action and D'Arezzo has not offered evidence disputing these facts, the Court grants Guild's Motion for Summary Judgement on this issue.

## II.    Gramm Leach Bliley Act

D'Arezzo's second cause of action asserts a violation of the Gramm Leach Bliley Act ("GLBA"), 15 U.S.C. § 6801 *et seq*. (ECF No. 2 at 9.) The GLBA imposes upon financial institutions the "obligation to respect the privacy of [their] customers and to protect the security and confidentiality of those customers' nonpublic personal

information." 15 U.S.C. § 6801(a). To that end, D'Arezzo asserts that Guild wrongfully disclosed "nonpublic personal information to non-affiliated third parties" (ECF No. 2 at 9) and failed to disclose forms required by GLBA. (ECF No. 10 at 3, ¶ 20.) D'Arezzo simply makes conclusory statements followed by a citation to the GLBA to support his claim. (ECF No. 2 at 9, ¶ 59, ECF No. 10 at 3, ¶ 20.) In contrast, Guild argues that it did not inappropriately share D'Arezzo's private information and, more importantly, that D'Arezzo lacks standing to assert this claim because there is no private right of action under the GLBA. (ECF No. 19 at 15, ECF No. 12 at 10.)

The language of GLBA does not create a private cause of action. *In re Davis*, 430 B.R. 902, 908 (Bankr. D. Colo. 2010); *Dunmire v. Morgan Stanley DW, Inc.*, 475 F.3d 956, 960 (8th Cir. 2007) ("No private right of action exists for an alleged violation of the GLBA."). Courts have also refused to read an implied private cause of action into the GLBA because there is no evidence that Congress intended to create such an action. *Briggs v. Emporia State Bank & Tr. Co., 05-2125-JWL, 2005 WL 2035038, at *2-3 (D. Kan. Aug. 23, 2005)*. Moreover, D'Arezzo has failed to bring to the Court's attention any statute or case law providing otherwise.

Accordingly, even assuming for the sake of argument that Guild's conduct violated the GLBA, D'Arezzo cannot maintain a private cause of action for an alleged GLBA violation. For that reason, the parties dispute on whether Guild inappropriately shared D'Arezzo's private personal information is immaterial. D'Arezzo's claim fails as a matter of law. Accordingly, the Court denies D'Arezzo's Motion for Summary Judgment. To that end, the Court finds that Guild has met its burden of proving that it is entitled to judgment

as a matter of law on this claim because GLBA does not allow D'Arezzo to bring a private cause of action. The Court grants summary judgment in favor of Guild on D'Arezzo's GLBA claim.

### III.    Right to Rescind

D'Arezzo's third claim asserts a violation of the Truth in Lending Act ("TILA"). TILA provides consumers a right to rescind a consumer credit transaction where a security interest is retained in the obligor's principal dwelling. 15 U.S.C. § 1635(a). Under this Act, D'Arezzo argues that Guild's predecessor, Cherry Creek Mortgage, failed to notify him of his statutory right to rescind the mortgage transaction. (ECF No. 2 at 9, ¶ 60); *see* 15 U.S.C. § 1635(a). D'Arezzo further alleges that he notified Cherry Creek of his intention to exercise his right to rescind the transaction in April and October of 2023, but Cherry ignored the correspondence and did not rescind the transaction. (ECF No. 2 at 9, ¶ 59.) In comparison, Guild contends that D'Arezzo's claim fails because he is not entitled to a statutory right of rescission due to an express exception within TILA. (ECF No. 12 at 8.)

While TILA does provide consumers a statutory right to rescind certain credit transactions (15 U.S.C. § 1635(a)), TILA does *not* extend this right to "residential mortgage transaction[s]." 15 U.S.C. § 1635(e)(1); *see Singh v. U.S. Bank National Assoc.*, 687 Fed. App'x 721, 722-23 (10th Cir. May 1, 2017) (affirming dismissal of plaintiff's TILA claim based upon TILA's inapplicability to a residential mortgage transaction). TILA defines a "residential mortgage transaction" as "a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent

consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling." 15 U.S.C. § 1602(x).[2]

Here, the undisputed facts establish that D'Arezzo's transaction is a residential mortgage transaction because the Loan was obtained to finance the purchase and acquisition of D'Arezzo's personal residence. (ECF No. 2 at 5, ¶ 20 ("Claimant entered into a consumer transaction. . . to obtain a $225,000 mortgage loan secured by Claimants principal residence. . ."; ECF No. 12-2 at 6-8.) Accordingly, under TILA's exception for residential mortgage transactions, D'Arezzo has no statutory right to rescind the transaction and Cherry Creek and its successor Guild did not violate TILA by failing to inform D'Arezzo of a right he did not possess.

For these reasons, D'Arezzo has failed to establish that he is entitled to judgement as a matter of law and the Court denies D'Arezzo's Motion for Summary Judgement on this claim. Furthermore, the Court grants summary judgement in favor Guild because Guild has established that it owed no duty to D'Arezzo under TILA.

## IV.    One Silver Dollar as Payment in Full

In his fourth claim, D'Arezzo asserts he was denied his "right to pay in silver coin." (ECF No. 2 at 10, ¶ 62.) In February 2023, D'Arezzo tendered a sole silver dollar to WCDA in an attempt to pay the Loan in full. (ECF No. 19-1 at 3, ¶ 16.) On March 2, 2023, WCDA returned the silver dollar to D'Arezzo in a letter stating: "We are not able to accept your silver dollar as payment in full on [the] loan …. We are returning the silver dollar." (ECF

---

[2] The statutory definition for "residential mortgage transaction" has been redesignated from § 1602(w) to § 1602(x).

No. 8-12 at 1.) In response to Mr. D'Arezzo's April 28, 2023 correspondence to Cherry Creek the WCDA disputed his assertion that the loan and mortgage had been canceled. (ECF No. 8-12 at 2). To the contrary the WCDA advised Mr. D'Arezzo that it remained intact and he remained obligated to make his payments. *Id*. He was also invited again to view the original promissory note at WCDA's Casper office. *Id*.

D'Arezzo argues this refusal to accept his silver dollar payoff violated an unspecified provision of the Wyoming Constitution, the Wyoming's "coinage act," and the First Amendment and Article One, Section 10 of the United States Constitution. *Id.* Again, D'Arezzo does not provide any analysis for his claim, rather he simply makes conclusory statements that he is entitled to judgement under the law. *Id.* Even construing this claim liberally, D'Arezzo's claim that Guild wrongfully denied the silver coin as full payment for the Loan fails for many reasons.

First, D'Arezzo does not specify what provision of the Wyoming Constitution was allegedly violated. Regardless, Wyoming does not recognize a cause of action based on an alleged violation of its Constitution unless there is implementing legislation stating otherwise. *May v. Southeast Wyo. Mental Health Ctr.*, 866 P.2d 732, 737 (Wyo. 1993) (holding "civil rights claims, based on the Wyoming Constitution, fail because of no implementing legislation"); *Deselms v. Occidental Petro. Corp.*, No. 19-CV-243, 2024 U.S. Dist. LEXIS 163187, at *1, *10 (D. Wyo. 2024); *Stone v. Simone*, No. 13-CV-126, 2014 U.S. Dist. LEXIS 185954, at *1, *11 (D. Wyo. 2014). Because D'Arezzo fails to cite the specific provision Guild allegedly violated and because D'Arezzo has not presented any

legal authority that suggests such a private cause of action for this claim, the Court finds that he did not meet his burden showing that he is entitled to judgement as a matter of law.

Second, although D'Arezzo does not identify which statute(s) he characterizes as Wyoming's "coinage act," to the extent he intends to refer to the Wyoming Legal Tender Act, Wyo. Stat. § 9-4-1301 *et seq.*, that Act contradicts his position. The Act prohibits a person from compelling any other person or legal entity to accept gold or silver coin as legal tender. Wyo. Stat. § 9-4-1305; *see also* § 9-4-1302. As such, the Act prohibits D'Arezzo from compelling WCDA to accept the silver dollar as payment, and he is therefore not entitled to judgment as a matter of law for this claim.

Third, D'Arezzo's claim for a violation of the United States Constitution fails to support a 42 U.S.C. § 1983 action. Section 1983 does not create any substantive rights or an independent cause of action. *See Brown v. Buhman*, 822 F.3d 1151, 1161 n.9 (10th Cir. 2016). In addition, a claim under § 1983 requires state action—private actors are not subject to liability. *See Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995) (§1983 liability only attaches to conduct which occurs under state law not private conduct). Moreover, a requirement of every § 1983 claim is that the plaintiff must specify the defendant's personal involvement in the alleged constitutional violation. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 768 (10th Cir. 2013). D'Arezzo claims WCDA denied his attempt to pay in silver coin (ECF No. 2 at 10, ¶ 62), but WCDA is not a party to this case and is not named as a defendant in the Complaint. Because D'Arezzo does not allege facts showing Guild's personal involvement in the alleged constitutional deprivation, his claim fails as a matter of law.

D'Arezzo cannot make out a claim based on WCDA's rejection of one silver dollar offered in full satisfaction of the Loan. D'Arezzo is not entitled to summary judgment on this claim. Additionally, Guild argues that it is entitled to judgment as a matter of law for this claim because D'Arezzo offered the silver dollar as payment for the Loan *in full*—which WCDA promptly rejected and returned to D'Arezzo. (ECF No. 19 at 16). D'Arezzo has failed to set forth how WCDA's rejection entitles him to judgment as a matter of law against Guild and has failed to dispute Guild's Motion for Summary Judgement on this claim. As such, the Court grants Guild's Motion for Summary Judgement.

## V.    Slander of Title

D'Arezzo's fifth claim states that Guild disparaged, slandered, and clouded D'Arezzo's title to the Property by "preparing, posting, publishing, and recording" documents to enforce the Loan against D'Arezzo. (ECF No. 2 at 10, ¶¶ 65, 66.) Additionally, he asserts Guild knew or should have known that these documents were improper because Guild has no right, title, or interest in the Property. (*Id.* at ¶ 66.) Notably, D'Arezzo does not cite to any legal authority to support these allegations. In contrast, Guild argues that it has the legal right to enforce the Loan and consequently, there was nothing false or malicious about Guild's actions. (ECF No. 19 at 17.)

Slander is defined in Wyoming as "a false and malicious statement made in disparagement of a person's title to real or personal property, or of some right of his causing him special damage." *Nicodemus v. Union Pac. Corp*., 440 F.3d 1227, 1235 n.8 (10th Cir. 2006). Based upon this definition, D'Arezzo's claim only succeeds if he establishes that Guild's statements are both false and malicious—meaning the crux of the

issue is whether Guild has the right to enforce the Loan. Though not obviously clear from his briefs, the Court liberally construes D'Arezzo to take issue with Guild's enforcement of the loan. First, is the Loan's chain of transfer and second, is Guild not being in possession of the original loan document.[3]

As previously explained, the Loan's chain of transfer is clear. D'Arezzo took out a Loan for the Property from Cherry Creek, who then transferred the Loan and its accompanying Note and Mortgage to WCDA. (ECF No. 12-2 at 6-8; ECF No. 12-3 at 3, ¶ 14.) From there, WCDA transferred the Loan back to Cherry Creek who then proceeded to transfer the Loan to Guild, who is the current owner of the Loan. (ECF No. 19-1 at 4, ¶ 19; ECF No. 12-4 at 30.) Guild's ownership of the Loan is evidenced by the Assignment of Mortgage that is recorded in Converse County's records. (ECF No. 12-4 at 30.) Additionally, the Loan's chain of transfer is undisputed as D'Arezzo has failed to provide any documents that question the validity of these records.

The fact that the original Loan was either lost are destroyed is immaterial here because Wyoming allows a lost or destroyed loan to be enforced if certain requirements are met. Wyo. Stat. § 34.1-3-309. As discussed previously, the undisputed facts establish—and D'Arezzo has failed to dispute—that Guild meets these requirements. Thus, as legal owner of the Loan, any documents Guild prepared to enforce that Loan are not false or malicious because Guild maintains the right to take such enforcement action.

---

[3] In his Sur Reply, D'Arezzo also appears to question the validity of the Loan because the Note lacks an Allonge attached to it. (ECF No. 25-1 at 3). However, D'Arezzo does not cite any legal authority that states an Allonge is required to make a Loan and its Note enforceable. For these reasons, the Court does not find this argument to have legal merit.

In sum, D'Arezzo has failed provide evidence that disputes or creates a genuine issue of material fact as to Guild's legal ownership of the Loan and Guild's entitlement to seek enforcement of the Loan. Neither has D'Arezzo presented any facts that show Guild's statements were false and malicious. And for these reasons, the Court finds that D'Arezzo has failed to establish Guild committed slander of title and denies D'Arezzo's Motion for Summary Judgement. The Court grants Guild's Motion for Summary Judgement on this issue because Guild has established that D'Arezzo's claim fails as a matter of law.

### VI.    Quiet Title

D'Arezzo's sixth cause of action seeks to quiet title to the Property in himself. He asserts Guild does not "hold a perfected and secured claim in the property," and has "no right, estate, title, lien, or interest in, or to, the property or part of the property." (ECF No. 2 at 11, ¶ 75, 77.) Again, D'Arezzo argues that Guild has no interest in the Property due to the fact that Guild is not in possession of the Original Note. *Id.* But, as the Court has already addressed, Guild's Affidavit of Lost Promissory Note by Brian Orsino establishes Guild's interest in the Loan and its ability to enforce it pursuant to Wyoming Statute § 34.1-3-309.

Further, regardless of Guild's interest in the Property, D'Arezzo's quiet title claim fails because he based the claim on the weakness of Guild's title, rather than the strength of D'Arezzo's title to the Property. In a quiet title action, the plaintiff bears the "burden of proof and must stand on the strength of [his] own title and not on the weakness of the title of defendants." *Kirby Royalties, Inc. v. Texaco Inc.*, 458 P.2d 101, 106 (Wyo. 1969).

The Tenth Circuit affirmed this standard in *Spreitzer*, stating that the plaintiff's claim fails because he never asserted that he had superior title. *Spreitzer v. Deutsche Bank Nat. Tr. Co.*, 610 Fed. App'x 737, 744 (10th Cir. 2015). Specifically, the Court drew attention to the fact that the plaintiff never claimed that he had satisfied the note or was not in default, and thus had superior title. *Id.*

Similarly, D'Arezzo has failed to claim that he has satisfied the Loan or is not in default. Thus, his claim fails because he has not asserted his quiet title action based upon the superiority of his own title, but rather upon the weakness of Guild's title to the Property. Therefore, the Court finds that D'Arezzo has not established that he is entitled to judgment as a matter of law and his Motion for Summary Judgement on this claim is denied.

Furthermore, Guild argues that D'Arezzo's quiet title claim fails as a matter of law because he does not have a valid basis to dispute Guild's claim to the Property. (ECF No. 19 at 17.) As previously stated, D'Arezzo has not presented any evidence to show a material dispute as to Guild's interest in the Property, or to establish that he has superior title over Guild's interest in the Property. For these reasons, D'Arezzo's quiet title action fails and the Court grants Guild's Motion for Summary Judgment on this claim.

## VII.   Declaratory Relief

D'Arezzo's seventh claim encompasses the overarching theme of this action—that D'Arezzo requests the Court to hold that Guild has no interest in the Property and to relieve D'Arezzo of his Loan. (ECF No. 2 at 12, ¶¶ 80-89.) Again, D'Arezzo does not provide any legal authority or analysis to support his claim. *Id.* Guild argues that because

D'Arezzo has failed to present evidence that disputes Guild's interest in the Property and has failed to assert a viable legal claim against Guild, D'Arezzo's claim fails as a matter of law. (ECF No. 19 at 17.)

Even though the Court must liberally construe pro se arguments, the Court may not create arguments for the litigant. *Kirby v. Ocwen Loan Servicing, LLC*, 641 Fed. App'x. 808, 809 n.1 (10th Cir. 2014). In both the Complaint and D'Arezzo's Motion for Summary Judgement, he fails to show why, as a matter of law, he is entitled to declaratory relief. For these reasons, the Court finds that D'Arezzo has failed to establish that he is entitled to judgment as a matter of law. Thus, his Motion for Summary Judgement is denied. Further, the Court finds that Guild has established it is entitled to judgement as a matter of law on this claim.

## VIII.  RICO

Next, D'Arezzo asserts that Guild violated the Racketeer Influenced and Corrupt Organization Act ("RICO"). (ECF No. 2 at 13, ¶¶ 90-96.) D'Arezzo claims that Guild violated RICO by "engaging in predicate acts of mail fraud, manufacturing false evidence of indebtedness, and engaging in monetary transactions improperly derived from unlawful activity. . . ." *Id.* Guild counters that D'Arezzo has failed to sufficiently allege a RICO claim and is not entitled to judgement as a matter of law. (ECF No. 19 at 18.)

To bring a successful RICO claim, D'Arezzo must assert with particularity the conduct of an enterprise through a pattern of racketeering activity. *Tal v. Hogan*, 453 F.3d 1244, 1261 (10th Cir. 2006). The particularity requirement of Federal Rule of Civil Procedure 9(b) applies to RICO claims and requires the complaint to identity the party

making false statements, and the time, place, and contents of the false representation. *Id.*

at 1263 (quoting *Koch v. Koch Indus.*, 203 F.3d 1202, 1236 (10th Cir. 2000)).

Despite these serious allegations, D'Arezzo fails to meet the particularity

requirement. He does not state specific instances of Guild committing mail fraud,

manufacturing false evidence of indebtedness, or engaging in monetary transactions

improperly derived from unlawful activity. *See Tronsgard v. FBL Financial Group, Inc.*,

312 F.Supp.3d 982, 990-93 (D. Kansas 2018) (discussing requirements to satisfy Rule 9

and deficiencies in stating RICO claim). Further, D'Arezzo fails to outline the multiple

acts of Guild that would constitute a "pattern" of racketeering activity.  At most,

D'Arezzo makes conclusory statements that Guild made fake debt documentation and

unlawfully sold and transferred ownership of the Loan and Note (ECF No. 2 at 6, ¶ 12,

31.) But conclusory statements without specific factual allegations are insufficient to

successfully allege a RICO violation. *Sullivan v. Univ. of Kan. Hosp. Auth.*, 844 Fed.

App'x 43, 50 (10th Cir. 2021) (requiring more than conclusory allegations of criminal

conduct to sufficiently plead a RICO violation).

The Court finds that D'Arezzo has failed to meet the particularity requirement

state a plausible RICO claim much less establish that he is entitled to judgment as a

matter of law on this claim. As such, D'Arezzo's Motion for Summary Judgment fails.

The Court also finds that Guild has established that it is entitled to judgment as a matter

of law and grants summary judgement in its favor on D'Arezzo's RICO claim.

## IX.   RESPA

D'Arezzo's final claim asserts that Guild violated the Real Estate Settlement Procedures Act because "the payments between the Defendants were misleading and designed to create a windfall." (ECF No. 2 at 14, ¶ 101.) Though it is not exactly clear what provision D'Arezzo claims Guild violated, because he references the Housing and Urban Development's test for determining the legality of lender payments to mortgage brokers, the Court understands D'Arezzo to claim Guild violated 12 U.S.C.S. § 2607, a prohibition against kickbacks and unearned fees. (ECF No. 2 at 14, ¶ 99.) Once more, Guild argues that D'Arezzo's failure to provide any facts or evidence to support his allegations results in D'Arezzo's RESPA claim failing as a matter of law. (ECF No. 19 at 18.) The Court agrees.

RESPA provision § 2607 prohibits a person from giving or accepting any "fee, kickback, or thing of value" in part of a real estate transaction involving a mortgage loan. 12 U.S.C.S. § 2607(a). To show he is entitled to judgment as a matter of law under this claim, D'Arezzo must provide some evidence that there was a kickback fee either given or accepted by Guild. *Smith v. Argent Mortg. Co., LLC*, 331 Fed. App'x 549, 555 (10th Cir. 2009) (affirming the grant of summary judgment for the defendants because the plaintiff failed to provide any evidence of a kickback payment). However, D'Arezzo does not specify factual allegations to accompany his broad conclusory statements.

Because D'Arezzo has failed to provide any sort of evidence or factual allegations regarding Guild's involvement with a kickback fee, his RESPA claim fails as a matter of law and his motion for summary judgement is denied. Likewise, the Court finds that

Guild has established it is entitled to judgment as a matter of law in its favor on the RESPA claim.

### X. Motion For Preliminary Injunction and Emergency Hearing

D'Arezzo has filed a Motion for Preliminary Injunction (ECF No. 37) and a Motion for Emergency Hearing (ECF No. 39) of the same. D'Arezzo asserts that Guild is attempting to or proceeding with foreclosure on the property. The Court will deny D'Arezzo's request.

In order to be entitled to a preliminary injunction D'Arezzo has the burden to show "(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) that the injunction, if issued, will not adversely affect the public interest." *Dine Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016). As set forth above, D'Arezzo has failed to show a substantial likelihood of prevailing on the merits. To the contrary, Guild has demonstrated it is entitled to judgment in its favor and against D'Arezzo on all claims. Therefore, Plaintiff's Motion for Preliminary Injunction will be denied.[4]

### CONCLUSION

For those reasons as set forth above, the undisputed facts establish that Guild is entitled to judgment in its favor on D'Arezzo's claims. In addition, D'Arezzo's has failed to establish his entitlement to a preliminary injunction and his motion will be denied.

---

[4] The Court finds that an evidentiary hearing on D'Arezzo's Motion would not materially assist the court in resolving the motion, given the findings as set forth above.

**THEREFORE IT IS ORDERED** that Plaintiff D'Arezzo's Motion for Summary Judgment (ECF No. 10) is hereby DENIED;

**IT IS FURTHER ORDERED** that Defendant Guild's Cross Motion for Summary Judgment (ECF No. 18) is hereby GRANTED;

**IT IS FURTHER ORDERED** that Plaintiff D'Arezzo's Motion for Preliminary Injunction (ECF No. 37) is hereby DENIED;

**IT IS FURTHER ORDERED** that Plaintiff D'Arezzo's Motion for an Emergency Hearing on Preliminary Injunction (ECF No. 39) is hereby DENIED; and

**IT IS ORDERED** that the Clerk is directed to enter a judgment in Defendant Guild's favor and against Plaintiff D'Arezzo on all claims, terminating this case in favor of Defendant, Guild.

Dated this <u>24th</u> day of September, 2024.

Scott W. Skavdahl
United States District Judge